JOSEPH MILLER COMPANY, Respondent, vs. GATEWAY CITY TRANSFER COMPANY, Appellant.*

*October 15—November 20, 1945.*

* Motion for rehearing denied, with $25 costs, on January 8, 1946.

586

*Arthur T. Holmes* of La Crosse, for the appellant.

For the respondent there was a brief by *Hale, Skemp & Nietsch* of La Crosse, and oral argument by *Thomas H. Skemp*.

MARTIN, J.    There are some undisputed material facts not referred to or covered by the findings.    The Royal Wine

& Liquor Company in Chicago shipped two hundred cases of brandy to itself at La Crosse, with directions to notify the J. Miller Company, 122 North Fourth street, La Crosse, Wisconsin, on an order bill of lading on June 14, 1944, in sealed containers with bottles of brandy packed therein. The bill of lading acknowledges receipt of the shipment in apparent good order, except as noted (contents and condition of contents of packages unknown). The bill of lading provides that:

"The surrender of this original order bill of lading properly indorsed shall be required before the delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless provided by law or unless permission is indorsed on this original bill of lading or given in writing by the shipper."

No right of inspection was indorsed on the original bill of lading or given in writing by the shipper. An inspection of the shipment was made after delivery of the goods to the plaintiff company at La Crosse. The bill of lading contains the further provision:

Sec. 1 (b) : "No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, the authority of law, or the act or default of the shipper or owner, or for natural shrinkage."

The shipment left Chicago in one of the defendant's trucks at 10:20 p. m. on June 14th, and arrived at La Crosse at about 10:30 on the morning of June 15th, and remained in the van in the parking lot of defendant until the afternoon of June 16th, when plaintiff took up the order bill of lading which was at the State Bank of La Crosse, and delivered the order bill of lading to the defendant. Upon receipt of the order bill of lading defendant made delivery of the shipment to plaintiff within a few hours.

At the time of making delivery to the plaintiff leakage was found in some of the cases. Upon investigation it was found that on some of the bottles the wax had become softened, and the corks forced from the bottles. No bottles were broken. In forty-five bottles the liquor had leaked out, and in seventy-two bottles the corks were partially forced out but the contents were still in the bottles. On June 14th the temperature at Chicago was ninety degrees; on June 15th at La Crosse it was eighty-eight degrees, and on June 16th it was eighty-five degrees.

There were twelve bottles in each case; twenty-four hundred bottles in all; thus, in 4.87 per cent of the bottles the corks had been wholly or partially forced out. The bottles from which the corks had been wholly or partially forced out were scattered among many cases throughout the load. Besides the cork and wax method of bottling liquor, a screw-cap method is sometimes used. The screw-cap method allows for no expansion. Respondent contends that if that method had been used the bottles would have broken instead of pushing out the corks.

The plaintiff grounds its action on two theories of liability on the part of the carrier. First, that under the decision in *Klauber v. American Express Co.* 21 Wis. 21, the carrier, having been apprised of the character of the shipment, is liable as an insurer where the goods were received in a good condition and were delivered in a damaged condition, where the carrier failed to prove that the loss was due to one of the exceptions which would relieve the carrier, namely, an act of God, the act of the public enemy, or the act of the owner. Secondly, that delay in delivery of the shipment to the plaintiff after it had arrived in La Crosse constituted negligence as a matter of law on the part of the carrier.

The plaintiff's theory of liability on the ground of delay in making delivery after the arrival of the shipment at La Crosse is without merit. This was a shipment made by the consignor to itself with instructions to notify the plaintiff company. It

was an overnight shipment from Chicago to La Crosse, arriving in La Crosse at about 10 : 30 in the forenoon of June 15th. Draft with bill of lading was sent by the consignor to the State Bank of La Crosse. The amount of the draft was approximately $9,384. Under the terms of the bill of lading the carrier was not permitted to make delivery until the plaintiff company had taken up the draft at the bank, procured the original order bill of lading, and delivered same to the carrier. Plaintiff did not do this until the afternoon of June 16th, and it appears that within two hours after the bill of lading had been procured from the bank and delivered to the carrier the shipment was delivered to the plaintiff. We think it must be held as a matter of law that the carrier was not negligent in the delay in making delivery of the shipment to the plaintiff after its arrival in La Crosse.

It was the plaintiff's theory, and also the trial court's, that under the rule in *Klauber v. American Express Co., supra,* the carrier was an insurer and could only be relieved of its liability by showing that the actual cause of the damage to the goods in transit was the act of God, the act of the enemies of the country, or the act of the owner.

Aside from its theory of liability on the ground of negligent delay in making delivery to plaintiff after the shipment had arrived in La Crosse, plaintiff contends that by leaving the brandy stand in the closed van exposed to the normal summer heat, the heat caused the contents of the bottles to expand and thus blow the corks.

There seems to be no escape from the conclusion that the blowing of the corks was due to the fermentation of the brandy in the bottles from which corks were blown, or to the expansion of the contents of the bottles due to the temperature during the time the brandy was in transit or while it remained in defendant's van awaiting delivery of the bill of lading to the carrier. In 13 C. J. S., Carriers, p. 155, sec. 79, it is said:

"Applying the general principles here stated it has been held that the carrier is not liable for loss or injury due solely

to such causes as fermentation, depreciation, drying, decay, heating merely as a result of transportation, spontaneous combustion, effervescence, putrefaction, or corrosion or rusting resulting from the chemical union of parts of the goods shipped. Irrespective of the exemption from liability for injuries attributable to the acts of God, . . . it may perhaps also be stated as a general proposition that the carrier is not liable for loss happening from the operation of natural causes without negligence or fault of the carrier. This rule has been frequently applied where the shipment was susceptible to injury by freezing and was so injured or destroyed, *and it has been applied where the injury was due to warm weather. . . ."* As to the latter cause, citing *Nelson v. Woodruff,* 66 U. S. 156, 161, 17 L. Ed. 97.

That case involved a shipment of molasses. The loss was due to the bursting of a hogshead by reason of fermentation. At page 99 the court said:

"The implied obligation of the carrier does not extend to such cases, any more than it does to a case when the liquid being carried, if it shall be conveyed with care, is entirely lost from its intrinsic acidity and fermentation, and bursting the vessel which contains it; as it was adjudged that the carrier was not liable when a pipe of wine during its fermentation burst and was lost, it being proved that at the time it was being carried carefully in a wagon commonly used for such a purpose." Citing *Farra v. Adams,* Bull. N. P. 69.

To same effect see 4 R. C. L., Carriers, p. 728, sec. 200; 9 Am. Jur., Carriers, p. 862, sec. 725. In the latter authority it is stated:

"Another established exception to the common-law rule of liability as an insurer is where the loss or damage arises from the nature and inherent character of the property carried. . . ."

In *Faucher v. Wilson,* 68 N. H. 338, 339, 38 Atl. 1002, involving a loss while transporting a hogshead of molasses which burst while being unloaded, due to fermentation, it is said, page 1003:

"If the defendant was a common carrier, he is not liable for the plaintiff's loss, since it happened from the operation

of natural laws, which a common carrier does not insure against." See cases there cited.

The plaintiff's general manager testified that when heat is applied to brandy a steam or vapor pressure occurs, possibly caused by alcoholic fumes. The court's finding that "the owner [Royal Wine & Liquor Company] had no special knowledge of the character of the shipment of which they did not apprise the defendant carrier" is not sustained by the evidence. The only knowledge defendant had was that contained in the bill of lading. It disclosed that the shipment consisted of two hundred cases of brandy in glass. It recites that the two hundred cases were received in apparent good order. It further recites, "contents and condition of contents of packages unknown."

The brandy was in wooden boxes, not open to inspection at the time they were received by the carrier. The shipper is a wholesale liquor house; it is charged with the knowledge of the characteristics of the goods shipped and the effect of heat thereon. It also had knowledge of the temperature in Chicago on the date of shipment. The plaintiff's manager testified that they never notify carriers to protect brandy or whiskey from heat. If those engaged in the liquor business do not think brandy should be protected from heat, then the carrier ought not be required to afford such protection.

If fermentation of the brandy caused the corks to blow, the loss resulted from the operation of natural laws and the carrier would not be liable; and if it be true, as plaintiff's manager testified, that ordinarily there is no danger to brandy from heat, the fact that under certain circumstances heat may cause an expansion of the contents of a bottle of brandy to the extent that it blows the cork will not make the carrier liable for any resulting loss. Defendant was entitled to judgment dismissing the action with costs.

*By the Court.*—Judgment reversed. Cause remanded with directions to dismiss plaintiff's complaint with costs.